**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

GRISELDA BARRERA and EIDY GASPAR, on )
behalf of themselves and all other persons similarly )
situated, known and unknown, )
                                      )
            Plaintiffs, )
                                      )       Case No.  13 C 5889
       v. )
                                        )       Judge Samuel Der-Yeghiayan
STAFFING NETWORK HOLDING, LLC d/b/a )
STAFFING NETWORK and READERLINK, )       Magistrate Judge Gilbert
DISTRIBUTION SERVICES, LLC. )
                                      )
                                      )
           Defendants. )

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE
PARTIES' JOINT STIPULATION OF SETTLEMENT AND FOR APPROVAL OF
CLASS CERTIFICATION, FORM AND MANNER OF CLASS NOTICE, AND
SCHEDULING FAIRNESS HEARING FOR FINAL APPROVAL OF SETTLEMENT**

        Plaintiffs Griselda Barrera and Eidy Gaspar ("Plaintiffs"), on behalf of themselves and all

others similarly situated, move this Court for an order preliminarily approving the Parties' Class

Action Settlement Agreement (attached hereto as Attachment 1 (hereinafter, the "Settlement

Agreement") and an order approving class certification for settlement purposes, the form and

manner of class notice, and scheduling a Fairness Hearing for final approval of settlement. In

further support of this Unopposed Motion, the Plaintiffs state as follows:

**I.**        **BACKGROUND**

        **A.**        **SUMMARY OF THE COMPLAINT**

        On August 16, 2013, a class action lawsuit was filed in the U.S. District Court for the

Northern District of Illinois. The case is presently titled *Griselda Barrera, and Eidy Gaspar et al.*

*v. Staffing Network Holding LLC and Readerlink Distribution Services LLC.,* Case No. 13 C 3181.

Plaintiffs assert eleven Class claims, or Counts, against Defendants Staffing Network Holding LLC's (hereinafter "Staffing Network"), and Readerlink Distribution Services LLC's (hereinafter "Readerlink") in this Litigation. Count I of the Complaint asserts collective action claims for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") based on the Defendant Staffing Network's alleged failure to pay overtime wages. Counts II of the Complaint asserts class-wide violations of the Illinois Minimum Wage Law 820 ILCS 105/1, *et seq.* ("IMWL") based on Defendant Staffing Network's alleged failure to pay overtime wages. Counts IV and VI of the Complaint asserts class-wide violations of the Illinois Wage Payment and Collection Act , 820 ILCS 115/1, *et seq.* ("IWPCA") based on Defendant Staffing Network's alleged failure to pay all accrued vacation pay and for its alleged failure to pay wages for all the time worked at the rate agreed to by the parties, respectively to a class of employees.

Count VIII of the Complaint asserts class-wide violations of the Illinois Day and Temporary Labor Services Act, 820 ILCS 175/1, *et seq.* ("IDTLSA") based on Defendant Staffing Network's alleged failure to pay laborers in its employ for a minimum of four hours at the agreed upon rate when the employees were contracted to work at Readerlink, but were not utilized by Readerlink. Count IX of the Complaint asserts class-wide violations of the IDTLSA, based on Defendant Staffing Network's alleged failure to provide employees with proper Employment Notices as required by the IDTLSA. Count X of the Complaint asserts class-wide violations of the IDTLSA based on Defendant Staffing Network's alleged failure to provide employees with proper Wage and Payment Notices as required by the IDTLSA.

Counts III, V, and VII of the Complaint assert third party client liability against Readerlink for Staffing Network's failure to pay overtime wages for all time worked in excess of

2

forty per week, all earned vacation pay, and all wages at the rate agreed to by the Parties for all time worked, respectively.

Count XI of the Complaint asserts class-wide violations of the IDTLSA for Defendant Readerlink's alleged failure to maintain and remit an accurate record of hours worked by Plaintiffs and similarly situated employees to Staffing Network.

Defendants dispute that Plaintiffs and the Members of the Class are owed any overtime wages or vacation pay or that they failed to comply with their obligations under the IDTLSA.

### B.    SUMMARY OF THE SETTLEMENT TERMS

As set forth more fully herein Class Counsel performed extensive discovery in this matter and reviewed extensive time and payroll records produced by Defendants for the Named Plaintiffs and for the Class. These records included recorded hours worked and paid, and a sampling of electronically stored clock in and clock out information for Plaintiffs and the Class. As Class Counsel reviewed these documents, the Parties engaged in extensive arms-length settlement negotiations which have culminated in the attached Settlement Agreement, attached hereto as Attachment 1. The Parties believe they are and were fully and adequately informed of all facts necessary to evaluate the case for settlement and reached a settlement at the mediation session. Defendants continue to deny any wrongdoing in the matter, but they evaluated the risk inherent of proceeding to trial and the costs of litigation and determined the settlement reached was an appropriate compromise. The named Plaintiffs and their counsel likewise believe the settlement reached in this matter is a good outcome for Plaintiffs and the putative class. The material terms of the settlement are as follows, subject to approval by the Court:

1. **Class Definition**: The class of approximately 865 individuals allegedly owed unpaid wages is to be defined as, for settlement purposes:

All individuals who were employed by Staffing Network in Illinois as temporary employees and who were assigned to work at Readerlink Distribution Services, Inc.'s, Module Line and Promotions Departments in Illinois at any time between August 16, 2010 through August 16, 2013.

2. **Settlement Fund**: Defendants shall make a total Settlement Payment of up to $224,000.00 into a Qualified Settlement Fund upon preliminary approval of this class-wide settlement by the Court. Within ten days of this Motion being granted, Defendant Staffing Network will make an initial contribution of $54,000.00 towards that Settlement Fund while Readerlink will contribute $30,000.00. If the sum of estimate settlement payments to class members, administration costs, attorneys' fees and costs awarded by the Court, general release and enhancement payments to Plaintiffs, and payroll taxes (hereinafter "total settlement costs") exceeds the amount of $84,000.00, Defendant Staffing Network will finance the settlement fund up with an additional amount up to $194,000.00, as needed to satisfy all settlement costs as determined by the Settlement Administrator Staffing Network's maximum contribution to the fund will be $194,000.00. In the unlikely event the total settlement costs exceed the class settlement fund, class members' settlement payments will be reduced on a pro rata basis. The settlement fund will be apportioned as follows:

   a. Payment of all timely claims submitted by Claimants, determined using the formulae set forth below which is explained below;

   b. Payment of costs associated with the Qualified Settlement Fund[1];

   c. Payment to each named Plaintiff in the amount of $1,000.00 as an enhancement award for their service to the class, as approved by the Court;

   d. Payment to each named Plaintiff in the amount of $2,000.00 in consideration for Named Plaintiffs executing of a general release of all claims against Defendants, as approved by the Court; and

   e. Payment of attorneys' fees and costs in the amount of up to $22,666.67, or the equivalent of approximately ten and one tenth percent of the Settlement Fund, as approved by the Court.

3. **Individual Settlement Payments to the Class**: Class Members who file a valid claim form "Claimants" will receive a share of the Class Settlement Amount based on the following formula:

   a) Each Claimant will receive a payment of $2000.00;

---

[1] Plaintiffs' counsel has received a quote from Settlement Services, Inc., who will act the as the settlement administrator in this matter estimating a total claims administration cost of $18,500.

b)  Additionally, each Claimant who performed work for Defendants between April 1, 2012 and September 30, 2013 will receive $70.00 for each week during which the Claimant worked 35 hours or more.

c)  In the event the total settlement costs do not exceed the amount of $84,000.00 any difference between the total settlement costs and $84,000.00 will be redistributed amongst Claimants on a pro rata basis.

4. **Injunctive Relief:** In addition to the above referenced payments, Defendants Readerlink and Staffing Network have each agreed to implement practices that will help ensure compliance with the FLSA, IMWL, IWPCA and IDTLSA and ensure that the alleged violations do not occur.

Defendant Readerlink has agreed to make a Verification of clock in and clock out time ("Verification") containing the following information available after each temporary laborer assigned to Readerlink's facilities in Illinois clocks in and clocks out each day at the beginning and end of the laborer's shift: (i) the Laborer's name or employee identification number, (ii) the Laborer's work location, (iii) the date of the shift worked by the Laborer, and (iv) the time of the day at which that laborer clocked-in at the start of his or her shift or clocked-out at the end of his or her shift during that shift. The Verification forms will be available to all Laborers, whether or not they are entitled to a work verification pursuant to subsection 30(a-1) of the Illinois Day and Temporary Labor Services Act, 820 ILCS 175 *et seq.* Laborers will be able to print out their Verification using the same time card that they use to clock in or out at Readerlink's facilities. A computer with an attached printer will print out Class Members' Verification contemporaneously with the time that they clock in or clock out at the start and end of their shift.

Defendant Staffing Network has also agreed that it shall require laborers assigned to Readerlink's facilities in Illinois to sign an Employment Notice as defined by 820 ILCS 175/10, at the time they are assigned and/or at other times required by the IDTLSA, including when the terms of the laborer's assignment change, in the form of a statement containing the following items on a form approved by the Illinois Department of Labor:
a) the name of the day or temporary laborer;
b) the name and nature of the work to be performed;
c) the wages offered;
d) the name and address of the destination of each day and temporary laborer;
e) terms of transportation; and
f) whether a meal or equipment, or both, are provided, either by the day and temporary labor service agency or the third party client, and the cost of the meal and equipment, if any.

Defendant Staffing Network will provide a copy of the executed Employment Notice to laborers assigned to Readerlink's facilities in Illinois, and will maintain a copy of the executed Employment Notice for a period of three years from the date of final approval.

## II.      STANDARD FOR PRELIMINARY APPROVAL

The settlement or compromise of a class action requires this Court's approval. Fed.R.Civ.P. 23(e). The law encourages settlement of class actions, and a voluntary settlement is the preferred method of class action resolution. *Redman v. Radioshack Corp*., No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880, at *9 (N.D. Ill. 2014) (*citing Isby, et al. v. Bayh, et al*., 75 F.3d 1191, 1196 (7th Cir. 1996)).

In ruling on a motion for preliminary approval of a class action settlement, the district court must determine whether the proposed settlement is within a "range of reasonableness," such that sending notice to the class is warranted. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("in assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation") (internal citations omitted). If the proposed agreement presents no apparent defects or other indicia of unfairness, then the court should direct that notice of a fairness hearing be given to the Class Members, where evidence and argument may be presented for and against the proposed settlement. *Staton v. Boeing Co., Inc*., 327 F.3d 938 (9th Cir. 2003).

## III.      CERTIFICATION OF CLASS IS APPROPRIATE

A district court has broad discretion in determining whether the parties have made a showing that class certification is appropriate. *Keele v. Wexler,* 149 F.3d 589, 592 (7th Cir. 1998). In evaluating the fairness, reasonableness, and adequacy of the settlement, the Court should view the facts in a light most favorable to the settlement. *Isby*, 75 F.3d at 1199. The Court should not substitute its own judgment as to the best outcomes for litigants and their counsel. *Armstrong v. Bd. of Sch. Dirs*., 616 F.2d 305, 315 (7th Cir. 1980). The Court's role is to determine whether Plaintiffs are asserting a claim which, assuming its merits, would satisfy the requirements of

6

Rule 23. See H. Newberg on Class Actions, §24.13 at 60 (3d ed. 1992)(hereafter "Newberg"); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 171 (1974).

A.      **Plaintiffs' Class Claims Should be Certified For Settlement Purposes**

Rule 23 requires a two-step analysis to determine whether class certification is appropriate. A plaintiff must satisfy the requirements of Fed. R. Civ. P. 23(a) and fall within at least one of the categories identified in Rule 23(b). *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)(citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982). First, the action must satisfy all four requirements of Rule 23(a). That is, "the plaintiff must meet the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Id.*

Second, the action must satisfy one of the conditions of Rule 23(b). *Id.* Rule 23(b) is satisfied on a showing of one of three circumstances: (1) separate lawsuits would create the risk of inconsistent judgments or would be dispositive of the interests of nonparty Class Members; or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3) questions of law or fact common to the class predominate over questions affecting individual members, and the class action is superior to other available methods. Fed. R. Civ. P. 23(b)(1) – (3).

Plaintiffs' claims meet the requirements for class treatment of this Lawsuit.[2]

1.      **Certification Under Rule 23(a)**

a.      **Numerosity -- Rule 23(a)(1)**

_____

[2] As outlined in the settlement papers, Defendants believe that class certification is warranted for settlement purposes only, and reserve all defenses to class certification in the event that the settlement class is not certified. To the extent that Plaintiffs' arguments are not specifically limited to "for settlement purposes only," Defendants do not join in them and specifically reserve their rights to argue that class certification is not appropriate should the Settlement not be Finally Approved, or should it become void for any other reason.

The class is so numerous that joinder of all members is impracticable. When analyzing whether joinder is impracticable, factors such as judicial economy, geographic diversity of Class Members, and the ability of Class Members to institute individual lawsuits should also be considered. *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996). To determine whether joinder is impracticable courts must consider the circumstances unique to each case. *Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir. 1966). "To require a multiplicity of suits by similarly situated small claimants would run counter to one of the prime purposes of a class action." *Id.* at 1333. In this case, the Parties have established that the class is composed of 117 individuals. The size of this putative class easily satisfies Rule 23(a)(1).

b.        **Commonality -- Rule 23(a)(2)**

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). "[C]ommonality requires the plaintiffs to demonstrate that the class members have suffered the same injury." *Jamie S. v. Milwaukee Pub. Schs*, 668 F.3d 481, 484 (7th Cir. 2012). (internal quotation marks omitted); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). In order to satisfy this requirement, there needs to be just one common question of law or fact but that common question cannot be just a superficial similarity. *Dukes*, 131 S. Ct. at 2556; *Jamie S.*, 668 F.3d at 497. Not only must the class claims "depend on a common contention," that common contention "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551; *Jamie* S., 668 F.3d at 497.

Here, Plaintiffs' claims are based on questions of fact and law common to the class. Each Class Member was allegedly employed by Defendants and subject to Defendants' compensation

8

and record keeping policies during the Class period, including, for example: a) the alleged practice by Defendants of not compensating Class Members for all hours worked in excess of forty during individual work during a period of several months in 2012; b) the alleged practice by Defendant Staffing Network of not providing Plaintiffs and Class Members with an employment notice at the beginning of their assignment; and c) Defendant Readerlink's alleged practice of not keeping an accurate record of the hours worked temporary laborers assigned by Defendant Staffing Network to work at Readerlink and not providing these laborers with a work verification on days when they were assigned to work for a single day. The common questions are whether Plaintiffs and Class Members were not paid for all time worked, specifically, hours in excess of forty per week during individual work weeks in calendar year 2012, and whether Defendants' record keeping policies complied with the notice requirements of the IDTLSA. The resolution of these questions will resolve the matter for the entire class.

### c. Typicality -- Rule 23(a)(3)

The question of typicality is closely related to the preceding question of commonality. The Seventh Circuit has held that a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992). To meet the typicality requirement, there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group. *Spano v. Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). The claims here of Plaintiffs and Class Members arise from the same alleged conduct of Defendants. Plaintiffs alleged Defendants failed to pay them the obligatory or agreed upon rate for extra hours worked in individual work weeks in violation of various state and federal laws regulating compensation.

9

### d.       Adequacy of Representation -- Rule 23(a)(4)

Rule 23(a)(4) requires the named class representative "will fairly and adequately protect the interests of the class." "The adequacy of representation requirement has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the named representative must have a "sufficient interest in the outcome to ensure vigorous advocacy; and, (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously." *Lau v. Arrow Fin. Servs., LLC*, 2007 U.S. Dist. LEXIS 40066, 17 (N.D. Ill. 2007)(citing *Sledge v. Sands*, 182 F.R.D. 255, 259 (N.D. Ill. 1998); *Gammon v. GC Servs. Ltd. P'ship.*, 162 F.R.D. 313, 317 (N.D. Ill. 1995)). The burden of demonstrating that the class representative is adequate is not heavy" *Sledge,* 182 F.R.D. at 259.

Plaintiffs satisfy this standard here. Plaintiffs do not have antagonistic or conflicting claims with other members of the class. Plaintiffs and the class were all employed by Defendant in the State of Illinois and all seek unpaid wages pursuant to a state obligation or agreement to be compensated for all hours worked. Plaintiffs also have a sufficient interest in the outcome to ensure vigorous advocacy. Adequacy requires the named plaintiffs to be conscientious and to "understand the basic facts underlying his claims." *Id*. Plaintiffs here understand the general foundation of the case, each had their deposition taken by both Defendants, participated in the Parties' informal and formal discovery, and assisted Class Counsel in reviewing and analyzing documents produced by Defendants. This qualifies Plaintiffs as "conscientious representative plaintiffs" and satisfies this element. *Robles v. Corporate Receivables, Inc*., 220 F.R.D. 306, 314 (N.D. Ill. 2004).

As explained, *infra*, Section V(C), the named Plaintiffs' attorneys are qualified and able to conduct the proposed litigation vigorously.

**B.      This Action Satisfies the Requirements of Rule 23(b)**

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy the requirements of one of the subdivisions of Rule 23(b). Rule 23(b)(3) provides that a class can be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Plaintiffs seek certification under Rule 23(b)(3). *See Allen v. International Truck and Engine Corp.*, 358 F.2d 469, 472 (7th Cir. 2004).

Rule 23(b)(3) allows an action to be maintained as a class action if the court finds that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual class members" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In determining "superiority", the court should look to non-exhaustive factors: the interest of class members in individually controlling separate actions, any litigation concerning the controversy already commenced, the desirability or undesirability of concentrating the litigation, and the manageability of the class action. *Id*. The Seventh Circuit has concluded that classes seeking substantial damages may be certified under Rule 23(b)(3). *Jefferson v. Ingersoll International Inc.*, 195 F.3d 894, 898 (7th Cir. 1999). The courts have certified similar class claims seeking unpaid wages and statutory penalties under Rule 23(b)(3). *See De Leon-Granados v. Eller and Sons Trees, Inc.*, 497 F.3d 1214 (11th Cir. 2007) (claim for unpaid wages under the Migrant and Seasonal Agricultural Worker Protection Act (AWPA)); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 612-14 (C.D. Cal. 2005) (claim, *inter alia*, for unpaid wages and itemized payroll statements under California law).

11

The common questions of law and fact in this case predominate over any individual issues. The dominant legal issue is whether Defendants' compensation policies violated the FLSA 29 U.S.C. §201 *et seq*., the IMWL 820 ILCS 105/1, *et seq*., the IWPCA, 820 ILCS 115/1, *et seq.*, and the IDTLSA, 820 ILCS 175/1, *et seq*. The predominance requirement is also satisfied where a "common nucleus of operative fact," for which the law provides a remedy, exists among all class members. *Chandler v. Southwest Jeep-Eagle, Inc*., 162 F.R.D. 302, 310 (N.D. Ill. 1995). In this case, there is a common nucleus of operative fact that concerns Defendants' compensation policies.

Further, a class action is superior to other methods of adjudication in this case. Judicial economy and efficiency, as well as consistency of judgments would be achieved through the certification of the class. *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill 1992). The alternative is potentially *thousands* of individual lawsuits and piecemeal litigation.

## C. Plaintiffs' Counsel Should be Appointed Class Counsel

Rule 23(g) requires that courts consider the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims, (2) class counsel's experience in handling complex litigation and class actions, (3) counsel's knowledge of the applicable law, and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g). In this case, all these requirements are met. Plaintiffs' attorneys have extensive experience and expertise in complex employment litigation and class action proceedings, and are qualified and able to conduct this litigation. Plaintiff's counsel, Christopher J. Williams and Alvar Ayala, have been lead counsel or co-counsel in over 300 wage and hour cases filed in the Circuit Court of Cook County and the Northern District of Illinois. The majority of these cases set forth class claims under the FLSA, the IMWL, the IWPCA, the

12

IDTLSA and the ECA and proceeded as class actions and/or collective actions under §216(b) of the FLSA.[3]

## IV.  THE PARTIES' PROPOSED SETTLEMENT

After substantial litigation including extensive discovery, followed by extensive negotiations, including numerous in-person and telephonic meetings between counsel, investigation by the Parties and their Counsel, the Parties have reached an agreement to settle Plaintiffs' claims asserted in Counts I through XI of the Complaint on a class-wide basis. A summary of the settlement terms are outlined below.

### A.  The Settlement Class Definition and Settlement Period

As part of the Settlement, the Class is defined as:

> All individuals who were employed by Staffing Network in Illinois as temporary employees and who were assigned to work at Readerlink Distribution Services, Inc.'s, Module Line and Promotions Departments in Illinois at any time between August 16, 2010 through August 16, 2013.

---

[3] Plaintiffs' Counsel has regularly been designated as class counsel in class action employment litigation including: *Dickerson v. Roger's Premier Enterprises, LLC,* Case No. 13-7154 (Final approval 01/05/15; *Hernandez v. ASG Staffing, Inc.,* Case No. 12-2068 (Final Approval 12/11/14); *Alvarado et al. v. Aerotek,* Case No. 13 C 6843 (Preliminary Approval 8/12/2014); *Blancas et al. v. Cairo and Sons Roofing, Co. Inc.,* Case 12 C 2636 (Final Approval 12/12/2013); *Dean et al. v. Eclipse Advantage Inc., et al* Case 11-C-8285 (Final Approval 12/17/2013); *Gallegos et al v. Midway Building Services, LTD et al.,* Case No. 12-C-4032 (Final Approval 10/02/2013); *Craig v. EmployBridge et al.,* Case No. 11-C-3818 (Final Approval 04/04/13); *Smith et al. v. Dollar Tree Distribution, Inc.,* Case No. 12-C-3240 (Final Approval 2/27/13); *Ramirez et al. v. Paramount Staffing of Chicago, Inc.,* Case No. 11-C-4163 (Final Approval 1/29/13); *Bautista et al v. Real Time Staffing, Inc.,* Case No. 10-C-0644 (Final Approval 09/06/12); *Ochoa et al v. Fresh Farms International Market, Inc. et al.,* Case No.11-C-2229 (Final Approval 07/12/12); *Jones et al v. Simos Insourcing Solutions, Inc.,* Case No. 11-C-3331 (Final Approval 05/04/12); *Francisco et al v. Remedial Environmental Manpower, Inc. et al.,* Case No. 11-C-2162, (Final Approval 04/25/12); *Alvarez et al v. Staffing Partners, Inc. et al.,* Case No. 10-C-6083 (Final Approval 01/17/12); *Craig et al v. Staffing Solutions Southeast, Inc.,* Case No. 11-C-3818 (Final Approval 06/06/11); *Andrade et al v. Ideal Staffing Solutions, Inc. et al.,* Case No. 08-C-4912 (Final Approval 03/29/10); *Arrez et al v. Kelly Services, Inc.,* Case No. 07-C-1289 (Final Approval 10/08/09); *Acosta et al v. Scott Labor LLC et al.,* Case No. 05-C-2518 (Final Approval 03/10/08); *Ortegon et al v. Staffing Network Holdings, LLC et al.,* Case No. 06-C-4053 (Final Approval 03/13/07); *Garcia et al v. Ron's Temporary Help Services, Inc. et al.,* Case No. 06-C-5066 (Final Approval 04/03/07); *Camacho et al v. Metrostaff, Inc. et al.,* Case No. 05-C-2682 (Final Approval 05/17/06).

### B. The Settlement Amount and Injunctive Relief

Under the terms of the Settlement Agreement, Defendants will pay a total Settlement Amount of up to Two Hundred Twenty Four Thousand and 00/100 Dollars ($224,000.00), less the following amounts, to create a Class Settlement Fund:

1. The funds necessary to pay for the cost of establishing a Qualified Settlement Fund;

2. Four Thousand and 00/100 Dollars ($4,000), distributed equally among the two Named Plaintiffs as consideration in the amount of $2,000 for each Plaintiff executing a general release of all claims they have against Defendants, as approved by the Court;

3. Two Thousand and 00/100 Dollars, distributed equally among the two Named Plaintiffs as payment of an enhancement award to named Plaintiffs for their service to the Class, as approved by the Court;

4. An amount of approximately Ten and One Tenth percent of the Settlement Amount or up to Twenty Two Thousand Six Hundred Sixty Six and 67/100 Dollars ($22,666.67), as approved by the Court, as payment of attorneys' fees and costs.

Additional settlement terms are set forth in the complete Settlement Agreement, filed contemporaneously herewith.

In pursuing the claims of Class Members, and in evaluating the merits of the Settlement, Class Counsel has taken multiple depositions of managerial witnesses for Defendants, and reviewed extensive time and payroll records produced by Defendants for the Named Plaintiffs and for the Class. These records included Defendants' Answers to Plaintiffs' Discovery Requests, a sample of clock in and clock out information for Plaintiffs and the Class and payroll information for Plaintiffs and the Class for the relevant time period..

The Parties used the above-described information to design a formula that would provide Class Members with significant monetary relief based on Plaintiffs' theory of liability and the hours they worked at Readerlink during the relevant time period. Each Class Member's unpaid wage claims shall be based on the following formulae:

a)     Each Claimant will receive a payment of $200.00;

b)     Additionally, each Claimant who performed work for Defendants between April 1, 2012 and September 30, 2013 will receive $70.00 for each week during which the Claimant worked 35 hours or more.

c)     In the event that the sum of estimated event the total settlement costs do not exceed the amount of $84,000.00 any difference between the total settlement costs and $84,000.00 will be redistributed amongst Claimants on a prorata basis.

As noted above, Defendants Staffing Network and Readerlink have each agreed to implement practices that have been designed as injunctive relief to prevent the occurrence of any of the alleged violations in the future and to ensure compliance with the notice requirements of the IDTLSA. The injunctive relief that Defendants will adopt is as follows:

### Injunctive Relief as to Readerlink

a)  The term of any injunctive relief shall be 3 years from the effective date.

b)  The scope of the injunctive relief shall be limited to day or temporary laborers assigned to work at Readerlink's facilities in Illinois.

c)  The Defendant Readerlink agrees to the following actions

    i.    Within sixty (60) days of the Court's final approval of this Settlement Agreement, Readerlink will make a Verification of clock in and clock out time ("Verification") containing the following information available after each temporary laborer assigned to Readerlink's facilities in Illinois clocks in and clocks out each day at the beginning and end of the laborer's shift: (i) the Laborer's name or employee identification number, (ii) the Laborer's work location, (iii) the date of the shift worked by the Laborer, and (iv) the time of the day at which that laborer clocked-in at the start of his or her shift or clocked-out at the end of his or her shift during that shift. The Verification forms will be available to all Laborers, whether or not they are entitled to a work verification pursuant to subsection 30(a-1) of the Illinois Day and Temporary Labor Services Act, 820 ILCS 175 *et seq.* Laborers will be able to print out their Verification using the same time card that they use to clock in or out at Readerlink's facilities. A computer with an attached printer will print out Class Members' Verification contemporaneously with the time that they clock in or clock out at the start and end of their shift.

**Injunctive Relief as to Staffing Network**

a) The term of any injunctive relief shall be 3 years from the effective date.

b) The scope of the injunctive relief shall be relative to all laborers assigned by Staffing Network to work at a Readerlink's facilities in Illinois.

c) The Defendant Staffing Network agrees to the following actions:

d) Defendant Staffing Network shall require laborers assignedReaderlink's facilities in Illinois to sign an Employment Notice as defined by 820 ILCS 175/10, at the time they are assigned and/or at other times required by the IDTLSA, including when the terms of the laborer's assignment change, in the form of a statement containing the following items on a form approved by the Illinois Department of Labor:

a. the name of the day or temporary laborer;

b. the name and nature of the work to be performed;

c. the wages offered;

d. the name and address of the destination of each day and temporary laborer;

e. terms of transportation; and

f. whether a meal or equipment, or both, are provided, either by the day and temporary labor service agency or the third party client, and the cost of the meal and equipment, if any.

e) Defendant Staffing Network will Provide a copy of the executed Employment Notice to laborers; and

f) Defendant Staffing Network will maintain a copy of the executed Employment Notice for a period of three years from the date of final approval.

Although Defendants dispute Plaintiff's theory of liability, Defendants have agreed to create a Class Settlement Fund as described above and provide additional compensation to the Class Members. The settlement fund of up to $224,000.00 will be sufficient to compensate all Class Members who claim into the fund with a minimum payment of $200.00 and approximately five and a half hours of allegedly unpaid overtime for every week between April 1, 2012 and September 30, 2013 where Claimant worked 35 hours or more and may have been subject to the

Defendant's alleged practice of "storing" overtime hours and paying them at a straight time rate. In the experience of counsel for both Plaintiffs and Defendants in class cases involving low wage workers whose current address information is not available, as is the case here, well less than 100% of class members typically file a claim with the Settlement Administrator.[4] The settlement amount of up to $224,000.00, however, will allows class members to receive their maximum potential recovery under this settlement even if the participation rate in near 100%

Here, the Parties have agreed to a rigorous notice procedure designed to maximize the number of claims filed, which will be conducted by an experienced third party settlement administrator. In light of this reality for cases involving low wage workers, it is highly likely that each putative Class Member will receive close to 100% of the value of his/her claim.

### C.    Release and Bar of Claims

All Class Members who have not excluded themselves from the Settlement by filing timely "opt out" notices with the claims administrator shall be deemed to have relinquished all claims as set forth in Section II.F of the Settlement Agreement, and to have released Defendants and the other released parties from any and all liability arising out of those claims. Upon granting final approval of the Settlement, the Court shall dismiss this matter *with prejudice*, retaining

---

[4]*See, for example, Dean, et al. v. Mid-West Temp Group, Inc.* No. 11 C 8285 (N.D. Ill. Dec. 17, 2013)(Mason, J.)(Order granting final approval of staffing agency class settlement involving 1,212 class members with twenty-three percent (23%) claim-in rate); *See also* related cases *Craig, et al., v. EmployBridge of Dallas, Inc. et al.*, No. 11 C 3818, and *Hardaway, et al., v. EmployBridge of Dallas, Inc.*, No. 11 C 3200 (N.D. Ill. April 4, 2013)(Pallmeyer, J.)(Orders granting final approval of two staffing agency class settlements involving 7,066 class members with twenty-seven percent (27%) claim-in rate); *Jones, et al v. Simos Insourcing Solutions Corp,* No. 11 C 3331)(Bucklo, J.)(Order granting final approval of staffing agency class settlement involving 3,364 class members with five percent (5%) claim-in rate); *Francisco et al. v. REM Staffing, et al.,* No. 11 C 2162 (N.D. Ill. April 26, 2012)(Grady, J.)(Order granting final approval of staffing agency class settlement involving 4,340 class members with eight percent (8%) claim-in rate); *Alvarez, et al. v. Staffing Partners, et al.,* No. 10 C 6083 (N.D. Ill. Jan. 17, 2012 )(Finnegan, J.)(Order granting final approval of staffing agency class settlement with nine percent (9%) claim-in rate).
.

jurisdiction solely for the purpose of interpreting, implementing, and enforcing the Settlement Agreement consistent with its terms

### D.     Named Plaintiffs' Payments

In addition, as part of the Agreement, Defendants will pay a combined total of $4,000.00 in consideration for each Named Plaintiff's general release of claims against Defendants and a combined total of $2,000.00 as an enhancement awards for Named Plaintiffs' service to the Class.

### E.     Attorneys' Fees

Finally, pursuant to the Settlement, up to approximately ten and one tenth percent of the Settlement Amount, or $22,666.67, as approved by the Court, will be paid to Class Counsel as payment for all past and future attorneys' fees that have been or will be expended and for all costs incurred and that have or will be incurred in seeing this matter through Final Approval, securing the Final Order, and defending the settlement, including the conducting of any appellate action. Payment of attorneys' fees and costs pursuant to this section shall be paid from the Settlement Amount consistent with applicable legal precedent for wards of attorneys' fees under Rule 23.

## V.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A.     Settlement and Class Action Approval Process

"Federal courts naturally favor the settlement of class action litigation." *Isby*, 75 F.3d at 1196; *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (gathering cases). The traditional means for handling claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Class members, would be impracticable. The proposed Settlement therefore is the best vehicle

for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1)    Preliminary approval of the proposed settlement at an informal hearing;

(2)    Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)    A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Compl. Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by class action commentator Prof. Herbert Newberg, safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq.*

With this Motion, Plaintiffs request that this Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Id.* at § 11.25 at 11-36, 11-37. The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court

cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion).

The Court's grant of preliminary approval will allow all Class Members to receive Notice of the proposed Settlement's terms and of the date and time of the fairness hearing, at which Class Members may be heard regarding the Settlement, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented. *See Manual for Compl. Lit.*, at §§ 13.14, 21.632. Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *Id.* § 13.14.

**B.      The Criteria for Preliminary Settlement Approval Are Satisfied.**

**1.      The proposed Settlement offers a beneficial resolution to this litigation, thus warranting both this Court's preliminary approval and an opportunity for the Class Members to consider its terms.**

A proposed settlement may be approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable." *City of Seattle*, at 1276. In affirming the trial court's approval of the settlement in *City of Seattle*, the Ninth Circuit noted that it "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* at 1291 (internal quotation and citation omitted). The district court's ultimate determination "will involve a balancing of several factors" which may include:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the

> proceedings; the experience and views of counsel . . . and the
> reaction of the class members to the proposed settlement.
>
> *Id*.

As various courts have noted, "the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement" is viewed as the "most important factor relative to the fairness of a class action settlement." *Redman*, 2014 U.S. Dist. LEXIS 15880, at *9 In this case, Defendants have advanced various arguments that they believe are viable defenses in this matter and, at a minimum, demonstrate that prevailing on the merits or even certifying a class is uncertain if this matter proceeds in the absence of a settlement. For example, Defendants have argued that Plaintiffs and similarly situated employees were in fact paid for all timed worked. Defendants have also argued that to the extent Plaintiffs and similarly situated employees were not paid for any compensable time worked, any alleged liability would have been offset by a paid breaks that Plaintiffs and Class Members allegedly received each day. Specifically with regard to Plaintiffs' vacation pay, Defendants have argued that Defendant Staffing Network timely informed Class members of its cancellation of its vacation policy and paid Plaintiffs for any accrued vacation pay. [5]

Given the uncertainty of whether the claims could be certified for class treatment, Defendants' defenses on the merits and the difficulties of proof, the terms of the Settlement Agreement compromising the class are fair and reasonable. Counsel for both Parties are experienced in class action litigation. Based on their collective experience, the claim rate in class settlements in this field is typically very low, generally well below 50%. The Parties negotiated a Class Settlement Fund which Plaintiffs' Counsel believes will provide Class Members who make a successful claim on the Class Settlement Fund with substantial monetary relief based on Plaintiffs' theory

---

[5] Plaintiffs do not join in the arguments raised therein, but sets forth these arguments to inform the Court of the issues litigated in this matter.

of liability. Given the potentially viable defenses asserted by Defendants, the recovery that Plaintiffs and Class Members will receive and the strong injunctive relief policies that Defendants will adopt to further prevent the alleged violations of the FLSA, IMWL, IWPCA and IDTLA, approval of this settlement is warranted.

### 2. The Settlement Was Reached Through Arm's-Length Negotiations.

A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair. *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)(internal citation omitted). *See also Berenson v. Faneuil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair.")

The Settlement here is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues of wage and hour violations in particular. The settlement was reached after a year and a half of litigation. In negotiating this settlement, Plaintiffs' counsel had the benefit of years of experience advocating the interests of low wage laborers combined with an in-depth familiarity with the facts of this case. In addition, Plaintiffs' Counsel have successfully litigated and resolved over 30 class actions involving low wage laborers in the temporary staffing industry. Similarly, Counsel for Defendants are experienced class action litigators.

Settlement negotiations in this case took place over the course of several months. After a period of extensive investigation and discovery, including multiple discovery battles, the depositions of Named Plaintiffs and multiple witnesses for Defendants, frequent meetings between Class Counsel and the Named Plaintiffs, and meetings between Class Counsel and Defendants' Counsel, the Parties reached agreement to resolve this litigation, the terms of which

are reflected in the Stipulation of Settlement attached hereto as Attachment 1. Plaintiffs' Counsel supports the resulting settlement as fair and as providing reasonable relief to the members of the class.

### 3.    The Settlement Provides Substantial Relief for Class Members

The Settlement provides relief for all Class Members. All Class Members who claim into the fund will receive a minimum payment of $200.00 and approximately five and a half hours of allegedly unpaid overtime for every week between April 1, 2012 and September 30, 2013 where Claimant worked 35 hours or more and may have been subject to the Defendant's alleged practice of storing overtime hours and paying them at a straight time rate.  While Class members will receive a pro rata share of their claim, in the unlikely event that the sum of all class members' claims exceeds the size of the Class Settlement Fund, Class Members are expected to receive the full value of their claim pursuant to the agreed upon formulas. Additionally, the strong injunctive relief that was negotiated as part of the settlement is aimed at providing Class Members with information regarding the terms of their employment with Defendants as well accurate contemporaneous records of their hours worked for Defendants to further prevent any of the alleged practices under which Plaintiffs' claims arise in the future.

### 4.    Payments to the Named Plaintiffs are Appropriate and Reasonable.

The Named Plaintiffs shall receive a payment separate from the Class Settlement Fund as specified in Section 13 of the Settlement Agreement, as an enhancement award for their role in litigating this matter and for executing a general release. No other Class Member is being asked to execute a general release. However, for purposes of their claims for unpaid wages, the Named Plaintiffs' recovery will be equivalent to that of other Class Members as their settlement share will be calculated the exact same way as all other Class Members. As a result, the Named Plaintiffs are not receiving preferential treatment in the settlement of their unpaid wage claims.

### 5.    Plaintiffs' Request for Fees and Costs is Fair and Reasonable

Section 14 of the Settlement Agreement provides that Plaintiffs' Counsel will receive approximately ten and one tenth percent of the Settlement Amount (or $22,666.67), as approved by the Court, for all attorneys' fees and costs incurred and to be incurred in seeing this matter through Final Approval, including: (i) obtaining Preliminary Approval from the Court; (ii) responding to inquiries from and otherwise assisting Class Members regarding the Settlement; (iii) assisting in the review of claims submitted by Class Members; (iv) assisting in resolving any objections; and (v) defending the Settlement and securing the Final Order, including the conduct of any appellate action.

When the amount of the Settlement Amount in this case was negotiated, Defendants' offer was an "all in" global settlement offer, which included all aspects of the settlement consideration relief to the class, attorneys' fees, expenses, and costs. Such settlements, known as "common fund" settlements, are preferred by the law and fees are awarded from such settlement funds by the Court under "common fund" principles.

It is well settled under the "common fund" doctrine that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Co. v. Van Gement,* 444 U.S. 472, 478 (1980). The common fund doctrine permits plaintiffs' counsel to petition the court for fees out of a common fund created for the benefit of the plaintiff class. *Id.* The common fund doctrine is based on the idea that "those who have benefited from the litigation should share its costs." *Id.* at 563 (*citing Skelton v. General Motors Corp.,* 860 F.2d 250, 252 (7th Cir. 1989) (common fund principles "properly control a case which is initiated under a statute with a fee shifting provision, but is settled with the creation of a common fund"). Where a common fund is created in return

24

for release of a defendant's liability for damages and for statutory attorneys' fees, the district court's award of fees must be guided by equitable fund principles. *Skelton*, 860 F.2d at 256.

In 1984, the Supreme Court observed that, under the common fund doctrine, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). Since *Blum*, a majority of the circuits, including this Circuit, have affirmed that the percentage-of-the-fund method is available to the district court. *Blackburn v. Sundstrand Corp.*, 115 F.3d 493, 494 (7th Cir. 1997). "The common fund doctrine rests upon the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). When determining a reasonable fee in a class action settlement, courts in the Seventh Circuit typically use the percentage basis rather than a lodestar or other basis. *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998). In deciding fee levels in common fund cases, the Seventh Circuit has consistently directed district courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007)(*quoting In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)). The normal rate of compensation in the market is one-third of the common fund recovered because the class action market commands contingency fee agreements and the class counsel accepts a substantial risk of nonpayment. *George v. Kraft Foods Global, Inc.*, 2012 U.S. Dist. LEXIS 166816, 7-9 (N.D. Ill. 2012). See also *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998)(The typical contingent fee is between 33 and 40 percent in common fund cases.) *See also Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. Ill. 2007)(vacating district court's decision to cap fees at 15% of multi-million dollar

common fund after finding court misapplied common fund doctrine in case involving fee-shifting statute); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7*th* Cir. 2001)(vacating district court's decision to cap fees at 10% of multi-million dollar common fund after finding court had failed to follow market-based approach).

The percentage-of-the-fund method is commonly used in awarding attorneys' fees in class action settlements of wage and hour cases bought under the IWPCA, and IMWL, by both federal and state court judges. In *Arrez v. Kelly Services, Inc.*, Case No. 07 C 1289, the court approved the IWPCA and IDTLSA classes and awarded class counsel, including Plaintiffs' Counsel in the instant matter, 30% of the $11,000,000.00 common fund. Indeed, courts around the country frequently award fees in common fund cases in the 30% to 50% range. *See* 18 Class Action Reports at 537 (1995).

The fee requested here, representing approximately ten and one tenth percent of the total Settlement Amount is less than the typical of amounts of awards made and fees negotiated in the Chicago area.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs make the unopposed request that the Court: (i) grant this Motion for Preliminary Approval of the Stipulation of Settlement; (ii) approve class certification of the class identified herein; (iii) approve the Notice of Class Action, Proposed Settlement and Hearing; (iv) authorize notice to the Class; (v) set a date for the Fairness Hearing; (vi) enter the Proposed Order of Preliminary Approval attached hereto as Exhibit F to Attachment 1; and (vii) grant all further relief deemed just and proper.

Respectfully submitted,

Dated: January 27, 2015

s/Christopher J. Williams

26

Christopher J. Williams
Alvar Ayala
Jenee Gaskin
Workers' Law Office, PC
401 S. LaSalle Street, Suite 1400
Chicago, Illinois 60605
(312) 795-9121

Attorneys for Plaintiff**s**